FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2023 MAR -1  P II: 25

CAROL L. MICHEL
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

# FELONY

### BILL OF INFORMATION FOR FALSE STATEMENT TO THE SMALL BUSINESS ADMINISTRATION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 23-35 |
| v. | * | SECTION: SECT. D MAG. 2 |
| BRANDI WEBER | * | VIOLATION: 18 U.S.C. § 1001 |
| | * | |

\* \* \*

The United States Attorney charges that:

### COUNT 1

**A. AT ALL TIMES MATERIAL HEREIN:**

1. The defendant, **BRANDI WEBER** ("WEBER"), was a resident of New Orleans, Louisiana, within the Eastern District of Louisiana.

### The Small Business Administration

2. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by



___Fee_____
___Process_____
_X_Dktd_____
___CtRmDep_____
___Doc.No._____

enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3.   As part of its efforts, the SBA provided business loans through banks, credit unions, and other lenders. Those loans had government backed guarantees.

### The CARES Act and Paycheck Protection Program

4.   The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

5.   The PPP was overseen by the SBA, which had authority over all PPP loans. Individual PPP loans, however, were issued by approved private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

6.   To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business, The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make affirmative certifications to be eligible for the PPP loan. For example, in the PPP loan application (SBA From 2483), the business, through its authorized representative, had to state its average monthly payroll expenses and number of employees. In addition, businesses had to provide documentation showing their payroll expenses, as part of the PPP loan application process. These

figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

7.      Among the type of businesses eligible for a PPP loan were individuals who operated under a "sole proprietorship" business structure. In order to be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service ("IRS") on Form 1040, Schedule C, for a given year. The lending institution or loan processor used this information and documents to calculate the amount of money the individual was entitled to receive under PPP.

8.      Once a qualifying business completed a PPP application, a participating lender processed the application. If a PPP loan was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed. In the course of processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees. Harvest Small Business Finance, LLC was a participating financial technology lender in the PPP.

9.      Proceeds from a PPP loan were legally required to be used only for certain permissible business expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance. The interest and principal on the PPP loan was eligible for forgiveness, if the business spent the loan proceeds on permissible items within a designated period of time and used a certain portion of the loan toward payroll expenses.

10.     On or about July 12, 2020, **WEBER** filed for and later received a targeted advance Economic Injury Disaster Loan from the SBA in the amount of $3,500, premised upon the false statements that she had a dog grooming business with 9 employees and gross revenues of $35,000 in 2019.

11. On or about April 12, 2021, **WEBER** filed for and later received a PPP loan from Harvest Small Business Finance, LLC in the amount of $10,302, premised upon the false statements that she was employed as an esthetician and earned $49,450 during 2020.

**B.   THE OFFENSE:**

On or about April 2, 2021, in the Eastern District of Louisiana and elsewhere, the defendant, **BRANDI WEBER**, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the SBA, an agency within the executive branch of the United States, in that the defendant stated in her SBA Form 2483 PPP Borrower Application to Harvest Small Business Finance, LLC that she earned approximately $49,450 in tax year 2020 as an esthetician; however, in truth and in fact, the defendant knew that she did not have any earnings in 2020 as an esthetician and that the tax year 2020 Internal Revenue Service Form 1040 Schedule C that she submitted in support of her alleged earnings was a false document, leading to her receipt of an SBA backed PPP loan of approximately $10,302.00, in violation of Title 18, United States Code, Section 1001.

**NOTICE OF FORFEITURE**

1. The allegations of Count 1 of this Bill of Information are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2. As a result of the offense alleged in Count 1, the defendant, **BRANDI WEBER**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(3), any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, as a result of such offense.

3. If any of the above-described property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

DUANE A. EVANS
UNITED STATES ATTORNEY

_____
EDWARD J. RIVERA
Assistant United States Attorney

New Orleans, Louisiana
March 1, 2023

No. _____

# United States District Court
### FOR THE
**EASTERN** DISTRICT OF **LOUISIANA**

UNITED STATES OF AMERICA

vs.

BRANDI WEBER

---

**BILL OF INFORMATION FOR FALSE STATEMENTS**

Violation(s):  18 U.S.C. § 1001

Filed _____, 20 __23__

_____, Clerk

By _____, Deputy

_____
*Assistant United States Attorney*
EDWARD J. RIVERA